DeCARLO, Judge.
Grand larceny; five years.
The appellant was tried under an indictment which charged, omitting the formal parts, that:
“Carl McKinnon whose name to the Grand Jury is otherwise unknown, feloni-ously took and carried away from the shop, store, warehouse, or other building of Loveman, Joseph and Loeb, Division of City Stores, Inc., a Corporation, one calculator, of the value of $69.95; one digital clock, of the value of $39.95; and 2 albums, of the value of $11.94, all of the total value of $121.84, the personal property of Loveman, Joseph and Loeb, Division of City Stores, Inc., a Corporation, against the peace and dignity of the State of Alabama.”
In support of this indictment the State presented the following evidence:
On February 6, 1975, Nell Hyche was employed at the Western Hills Loveman’s as a security guard. She was dressed in “street clothes” but wore nothing that identified her as a security guard. Around 4:00 P.M., Hyche observed two black males standing near a counter in the stationery department. She was about seven feet away when she saw the taller man break the chain holding a calculator to a “display” and hand it to his companion, the appellant. At that point, the companion, who was *25 wearing a three-quarter length coat, reached through the pocket and took possession of the calculator. Hyche then saw the taller man pick up a digital clock and hand it to his companion. Again, his companion reached through his coat pocket and took possession of the clock.
When the men turned around and started to step away, Hyche walked up and informed them she was a Loveman’s security officer and to “give me back our merchandise.” Since they did not respond, she took hold of the companion’s coat and tried to take the merchandise from him.
Hyche could see the digital clock and two record albums in the coat. As she scuffled with the two, they tried to pull away and said: “Let me go, leave me alone, turn me loose.” While Hyche struggled with the two, they continued to pull her toward the entrance to the mall. Hyche hollered for assistance and L. M. Denson, the credit manager of the store, came to her aid.
Hyche recalled that as they reached the door, the taller of the two black males, pulled a gun and pointed it at her. She then released the coat, and along with Den-son, stepped back. The two men then turned and ran from the building.
When the two left the building, Hyche and Denson followed and saw them go to a parked car. About the same time, Officer B. L. Smith, of the Fairfield Police Department, drove up and Hyche quickly informed him of what had occurred. Subsequently, a highway patrolman drove up and he also was informed. When the men saw Officer Smith, they turned from the parked car and began to run. Hyche observed the defendant throwing down merchandise as he ran.
After the men were taken into custody, Hyche found the calculator about eight feet from the car. The gun was not found.
Hyche took the albums, the calculator and the clock and placed them in the store vault where they remained until the trial. Hyche said that she did not know if anyone tampered with the items but recalled they were in the vault the twenty or twenty-five times she went to it. She stated the calculator bore a scratch which was caused when it was thrown down.
According to Hyche the value of the clock was $39.95, the value of the calculator was $69.95 and the value of each album was $5.95.
Lloyd McKibbon Denson, Jr., on February 6, 1975, was employed by Loveman’s, Joseph and Loeb a Division of the City Stores, Incorporated, as an assistant store manager. Denson recalled seeing the disturbance and going to Hyche’s assistance. When he began to block the door, the taller of the two men, put a pistol in front of his face. Denson threw up his hands and allowed them to pass. He and Hyche then followed at a safe distance. Denson remembered seeing one of the men throw the record albums under the parked car that they had tried to get into. After the men were apprehended, Denson found, in the vicinity of the car, two record albums bearing the name “Loveman’s” above the letter code “F.” '
B. L. Smith was employed by the City of Fairfield as a police officer. He recalled seeing Hyche in the parking lot of the Western Hills Mall. As he approached her she pointed to two boys and said, “stop those two boys.” When Smith started in the direction of the two, they began to run. He remembered one of them throwing something down. Officer Smith said that he caught the taller of the two and that the defendant was subsequently apprehended by a State trooper.
At the completion of the testimony by the three foregoing witnesses, the defense made a motion for a directed verdict, and argued that the State had not met the burden of proof. It was maintained the State did not prove the taking of the merchandise as set out in the indictment. Counsel averred that the State failed to prove the albums were taken and added that the clock was dropped inside the store.
The court overruled the motion and Ralph McKinnon, the defendant’s brother was the only witness called by the defense. McKinnon recalled that he and his brother, the defendant, were in Loveman’s on the *26 day in question and he picked up a calculator to look at it. He stated that almost immediately, a lady who was dressed in “street clothes” came over and said, ‘What are you doing,’ and grabbed the calculator . . . ” According to McKin-non, she started pulling defendant’s coat and when he tried to separate them, she began to yell for help. McKinnon said that he did not strike or push her and that he just wanted to leave. He maintained he had about ninety-six dollars in his pocket and did not have a gun. He added that Hyche did not say that she was a security officer for Loveman’s and that her actions scared him.
During cross-examination, McKinnon stated that neither he nor his brother picked up a digital clock and denied throwing the calculator down in the parking lot. McKinnon admitted picking up the calculator and handing it to his brother so he could look at it. However, McKinnon denied that he or his brother dropped any article as they ran from the police. Further, he said that his brother did not have any albums and that he did not pull a gun on anyone.
The only contention made by the appellant is that the State failed to prove the corpus delicti as to two of the four items alleged in the indictment to have been felo-niously taken. He insists the trial court was in error when it did not grant his motion for a verdict of acquittal. Counsel concedes arguendo that the State proved the corpus delicti as to the calculator and the clock but insists it failed to show the corpus delicti as to the albums.
The felonious taking of property may be shown by facts and circumstances as well as by direct and positive evidence. Jones v. State, 51 Ala.App. 570, 287 So.2d 886. In our judgment, the evidence presented by the State was more than sufficient to support an inference that a larceny had been committed and the defendant did the felonious taking. Cherry v. State, 43 Ala.App. 318, 189 So.2d 786.
Further in Lee v. State, 20 Ala.App. 334, 101 So. 907, we find the general rule that:
. . where a particular kind of property is specifically described in an indictment, it must be proved as laid. However, it is no valid objection that the description of the property alleged to have been stolen is broad enough to include more than the proof shows, provided the proof shows a commission of the offense charged. . . .”
See also: Bates v. State, 152 Ala. 77, 44 So. 695; Reed v. State, 88 Ala. 36, 6 So. 840; and Tanner v. State, 37 Ala.App. 256, 66 So.2d 827.
In the present case, the testimony of Hyche and Denson provides an ample basis for the jury to find that the appellant was guilty of larceny.
Hyche stated that the time she approached the defendant and took hold of his coat, she saw the albums. Denson also saw the albums in the defendant’s possession when he threw them underneath the car. This testimony provides basis for the jury finding the appellant guilty of taking the two albums.
By concealing the albums underneath his coat and running from the building, the defendant acquired control over the property. In our judgment, the taking and aspor-tation was completed when he concealed the items in his coat. See: Jones v. State, 55 Ala.App. 274, 314 So.2d 876.
Under the facts and circumstances shown here, there was no error in the court refusing appellant’s motion for a directed verdict. The proof here was more than sufficient to warrant the submission of the question of defendant’s guilt to the jury.
We have searched the record and did not find any error.
AFFIRMED.
All the Judges concur.